IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

<table>
<tr><td>

FRANK C. SPENCER and MELANIE D.
SPENCER, h/w,

        Plaintiffs,

        v.

WILLIAM AVERY,

        Defendant.

</td><td>

CIVIL ACTION NO.  25-5708

</td></tr>
</table>

## MEMORANDUM OPINION

**Rufe, J.**                                                                                              **April 30, 2026**

After Defendant William Avery declined to pay a deposit for the purchase of a single-family residence owned by Plaintiffs Frank C. Spencer and Melanie D. Spencer, the Spencers sued for breach of contract.[1] Avery removed this case to federal court and filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] For the reasons provided herein, the Court will grant the Motion to Dismiss.

## I.    BACKGROUND

The Spencers allege the following well-pleaded facts, which are accepted as true at this stage of litigation.[3] The Spencers are citizens of Pennsylvania who own a single-family residence (the "Property") located at 2102 Spruce Street, Philadelphia, Pennsylvania 19103.[4] Avery, a citizen of Massachusetts,[5] became interested in purchasing the Property in 2025. On May 24, 2025, the parties entered into an Agreement of Sale for Avery to purchase the Property at a price

---

[1] Compl. [Doc. No. 1-1].

[2] Notice of Removal [Doc. No. 1]; Def.'s Mot. Dismiss [Doc. No. 5].

[3] *See Fenico v. City of Phila.*, 70 F.4th 151, 161 (3d Cir. 2023).

[4] Compl. ¶¶ 1, 3 [Doc. No. 1-1]; Notice of Removal ¶ 8 [Doc. No. 1].

[5] Notice of Removal ¶ 9 [Doc. No. 1].

of $3,750,000.00.[6] The Agreement specified that an initial deposit of $25,000.00 was due on or

before June 4, 2025, and that a second deposit of $182,500.00 was due within forty-eight hours

of satisfaction of the inspection contingency.[7] The Agreement provided for the remaining

balance to be due by the settlement date of August 14, 2025.[8] In the event of breach, the

Agreement contained a liquidated damages provision in Paragraph 26(G), which states:

"SELLER IS LIMITED TO RETAINING THOSE SUMS PAID BY BUYER, INCLUDING

DEPOSIT MONIES, AS LIQUIDATED DAMAGES."[9]

Avery did not pay the initial deposit of $25,000.00.[10] Still, he proceeded to conduct an

inspection of the Property.[11] After the inspection, on June 12, 2025, the parties executed a

Change of Terms Addendum to Agreement of Sale ("Addendum") resolving all open issues.[12]

The Addendum modified the Agreement by, among other things,[13] reducing the purchase price to

$3,704,000.00 and providing, "$207,500.00 deposit monies are to be received no later than close

of business Friday, June 13th, 2025."[14] The Addendum did not change the liquidated damages

provision in Paragraph 26(G) of the Agreement.[15]

---

[6] Compl. ¶¶ 4-5 [Doc. No. 1-1]; *see* Compl., Ex. A [Doc. No. 1-1].

[7] Compl. ¶ 5 [Doc. No. 1-1].

[8] *Id.* ¶¶ 5, 8.

[9] *Id.* ¶ 9; Compl., Ex. A ¶ 26(G) [Doc. No. 1-1].

[10] Compl. ¶ 10 [Doc. No. 1-1].

[11] *Id.* ¶ 11.

[12] *Id.*; Compl., Ex. B [Doc. No. 1-1].

[13] The Addendum also changed the settlement date to August 13, 2025, provided Avery with a credit for a home warranty, and designated that the Property is in a historic area. Compl. ¶ 12 [Doc. No. 1].

[14] *Id.*; Compl., Ex. B ¶ 7 [Doc. No. 1-1].

[15] *See* Compl., Ex. B ¶ 7 [Doc. No. 1-1] ("All other terms and conditions of the Agreement . . . remain unchanged and in full force and effect.").

Avery did not pay the $207,500.00 deposit.[16] On June 14, 2025, his agent wrote to the Spencers and told them that Avery "decided not to move forward with the purchase of 2102 Spruce Street."[17] The Spencers' counsel sent a letter demanding that Avery pay the $207,500.00 deposit, and Avery responded that he was not obligated to do so.[18]

On September 22, 2025, the Spencers filed a breach-of-contract complaint in state court.[19] They allege that Avery breached the Agreement of Sale, as modified by the Addendum, and seek to recover the $207,500.00 deposit, plus interest, court costs, and attorneys' fees.[20] Avery removed this case to federal court based on the parties' diversity of citizenship.[21] He then filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[22] The Motion is briefed and ripe for review.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead a plausible claim for relief, which requires that the plaintiff allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[23] In analyzing the complaint, the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any

---

[16] Compl. ¶ 13 [Doc. No. 1-1].

[17] *Id.*; Compl., Ex. C [Doc. No. 1-1].

[18] Compl. ¶¶ 14-15 [Doc. No. 1-1]; Compl., Exs. D, E [Doc. No. 1-1].

[19] Compl. [Doc. No. 1-1].

[20] *Id.*

[21] Notice of Removal [Doc. No. 1]; *see* 28 U.S.C. § 1446(a), (c).

[22] Def.'s Mot. Dismiss [Doc. No. 5].

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

reasonable reading of the complaint, the plaintiff may be entitled to relief."[24] However, the Court "need not accept as true unsupported conclusions and unwarranted inferences"[25] or "legal conclusions."[26] The question is not whether the plaintiff ultimately will prevail but whether the complaint is "sufficient to cross the federal court's threshold."[27]

## III. DISCUSSION

Sitting in diversity, this Court applies the choice of law rules of the forum state, which is Pennsylvania.[28] The Agreement of Sale concerns Pennsylvania property and includes a Pennsylvania choice-of-law provision,[29] so the Court applies Pennsylvania law in evaluating the Spencers' claim.[30]

To state a claim for breach of contract, the plaintiff must set forth facts showing "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."[31] Avery does not dispute the existence of a contract or his failure to pay the $207,500.00 deposit.[32] The question before this Court is whether the Spencers

---

[24] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[25] *Doug Grant, Inc. v. Greate Bay Casino Corp*., 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting *City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

[26] *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (quoting *Glassman v. Computervision Corp*., 90 F.3d 617, 628 (1st Cir. 1996)).

[27] *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).

[28] *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 596 U.S. 107, 115 (2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

[29] Compl., Ex. A ¶ 22(A) [Doc. No. 1-1].

[30] *See Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007) ("Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum." (quoting *Churchill Corp. v. Third Century, Inc.*, 578 A.2d 532, 537 (Pa. Super. Ct. 1990))).

[31] *Hart v. Arnold*, 884 A.2d 316, 332 (Pa. Super. Ct. 2005).

[32] *See* Def.'s Mot. Dismiss ¶¶ 4, 8-9 [Doc. No. 5-2].

suffered damages from Avery's nonpayment and what remedy, if any, is available to the Spencers.

In the Complaint, the Spencers assert that Avery's failure to pay the deposit entitles them to retain the deposit as liquidated damages under Paragraph 26(G) of the Agreement.[33] Avery disagrees, arguing that the plain language of Paragraph 26(G) limits the Spencers' recovery to what was actually paid—here, zero dollars.[34] Citing the Pennsylvania case *Tudesco v. Wilson*,[35] the Spencers respond that they should receive the unpaid deposit in order to uphold the parties' intention to provide for an effective liquidated damages provision and because, otherwise, they would be without a remedy for Avery's breach.[36]

The Third Circuit states the precepts of contract interpretation in Pennsylvania as follows: "Pennsylvania contract law begins with the 'firmly settled' point that 'the intent of the parties to a written contract is contained in the writing itself.' "[37] "Where language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended."[38] "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract."[39] A court may nevertheless look to extrinsic evidence to discern the meaning of a

---

[33] Compl. ¶¶ 23-24 [Doc. No. 1-1].

[34] Def.'s Br. Supp. Mot. Dismiss ("Def.'s Br.") at 3-4, 7, 9 [Doc. No. 5-2]. Avery also contends that the Spencers cannot proceed on their claim for liquidated damages because $207,500.00 is excessive and unconscionable under Pennsylvania law. *Id.* at 8-9. The Court will not opine on unconscionability because the unambiguous language of the Agreement prevents the Spencers from collecting an untendered deposit. Nor does the Court reach Avery's argument that specific performance was unavailable, *see id.* at 7-9, because the Spencers did not plead facts to establish a claim under a theory of specific performance.

[35] 60 A.2d 388 (Pa. Super. Ct. 1948).

[36] Pls.' Br. Opp'n Def.'s Mot. Dismiss ("Pls.' Br.") at 9-15 [Doc. No. 6-1].

[37] *Bohler-Uddeholm Am., Inc., v. Ellwood Grp., Inc.*, 247 F.3d 79, 92 (3d. Cir. 2001) (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993)).

[38] *Id.* at 92-93 (quoting *Steuart v. McChesney,* 444 A.2d 659, 661 (Pa. 1982) (alteration omitted)).

[39] *Id.* at 93 (quoting *Krizovensky*, 624 A.2d at 642).

contractual provision that is ambiguous.[40] Under Pennsylvania law, courts will find a contract ambiguous

> if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.[41]

Contractual language can give rise to two species of ambiguities: patent ambiguities and latent ambiguities. Whereas a patent ambiguity is facially apparent from the agreement, "a latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous."[42] "Although a party may rely on extrinsic evidence to establish a latent ambiguity, such an inquiry must remain tethered to the contractual language and may not be used merely to show that the parties intended something different from what was expressed in the agreement."[43]

Here, Paragraph 26(E) of the Agreement gives the Spencers the option of retaining "all sums paid by Buyer, including deposit monies, should Buyer: . . . Fail to make any additional payments as specified in Paragraph 2 [Purchase Price and Deposits], . . . Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, [or] . . . Violate or fail to fulfill and perform any

---

[40] *Id.*

[41] *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (quoting *Samuel Rappaport Family P'ship v. Meridian Bank*, 657 A.2d 17, 21-22 (Pa. Super. Ct. 1995)).

[42] *Bohler-Uddeholm*, 247 F.3d at 93 (quoting *Duquesne Light*, 66 F.3d at 614).

[43] *Pacifica Mechanicsburg LLC v. BJ's Wholesale Club, Inc.*, No. 25-cv-1663, 2026 WL 837975 (M.D. Pa. Mar. 26, 2026) (citing *Bohler-Uddeholm*, 247 F.3d at 93).

other terms or conditions of this Agreement."[44] Paragraph 26(G) states: "SELLER IS LIMITED TO RETAINING THOSE SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES."[45]

These provisions are susceptible to only one reasonable construction: the Spencers can recover liquidated damages only from the sums of money and deposits that Avery paid. The Spencers do not allege that Avery made payments, so they failed to state a plausible claim of entitlement to liquidated damages. The Spencers argue that the parties intended to create an "effective liquidated damages remedy,"[46] but their intentions do not controvert the unambiguous wording of Paragraph 26(G). Indeed, while extrinsic evidence can be relevant to resolving a latent ambiguity, the Spencers did not identify any term in the Agreement as a "contractual hook" upon which to claim such an ambiguity.[47] The Spencers' broad-based references to their "expectations, standing alone, are irrelevant without any *contractual hook* on which to pin them."[48]

The Spencers' other arguments are also unavailing. For instance, they argue that *Tudesco v. Wilson* authorizes sellers of real property to collect deposit monies as liquidated damages even if those monies were never received.[49] But the facts of *Tudesco* are distinguishable. There, the buyer and sellers agreed to the following: "If Buyer defaults . . . , the deposit herein mentioned

---

[44] Compl., Ex. A ¶ 26(E) [Doc. No. 1-1].

[45] *Id.* ¶ 26(G).

[46] Pls.' Br. at 11 [Doc. No. 6-1].

[47] *Bohler-Uddeholm*, 247 F.3d at 93.

[48] *Id.* (quoting *Duquesne Light*, 66 F.3d at 614 n.9). The Spencers also make a passing reference to Pennsylvania's requirement, drawn from the Restatement (Second) of Contracts, that the parties must conduct themselves in good faith. Pls.' Br. at 7-8 [Doc. No. 6-1]. They do not apply the good-faith doctrine to the facts of this case, so any argument invoking this doctrine is undeveloped and need not be considered. *See, e.g.*, *Berrocal v. Astrue*, No. 10-cv-2226, 2011 WL 890150, at *3 (D.N.J. Mar. 14, 2011) ("[U]ndeveloped arguments are considered abandoned or waived."); *Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) (same).

[49] Pls.' Br. at 12-15 [Doc. No. 6-1].

and any other deposits made by Buyer may, at the option of the Seller, be *retained* by the Seller as liquidated damages resulting from said default or in part payment of the consideration for the said premises if Seller elects to enforce this agreement according to law."[50] The buyer provided the sellers with a $1,600 deposit in the form of two checks.[51] After depositing the checks, the sellers learned that the buyer had stopped payment on the checks, so the sellers filed suit for breach of contract.[52] In affirming judgment for the sellers, the Pennsylvania Superior Court reasoned that to bar recovery of the deposits "would do violence to the clear intention of the parties to provide for an effective liquidated damage clause by the use of words which are plain, direct and understandable."[53] The court rejected the buyer's argument that the sellers could not "retain" a payment that was never cashed because, as it found, "the inability to retain the deposit as damages was caused by the act of the [buyer]."[54] The court also found it sensible that the sellers should collect liquidated damages because, had they sued directly on the checks, the buyer could not have claimed a defense.[55]

In contrast to *Tudesco*, Avery did not tender any payments, whether by check or otherwise. Thus, while the wording of the *Tudesco* damages provision favored recovery in that the buyer "made" deposits, the wording of Paragraph 26(G) does not. And although the Court does not condone Avery's alleged backpedaling, his conduct did not, as in *Tudesco*, undo the payment of a deposit that had been tendered. Put differently, the Spencers' argument would dramatically expand *Tudesco* because instead of suggesting that "sums paid" include non-cash

---

[50] *Tudesco*, 60 A.2d at 390.

[51] *Id.*

[52] *Id.*

[53] *Id.* at 391.

[54] *Id.*

[55] *Id.*

payments, the Spencers argue that "sums paid" should include amounts that Avery never tendered at all. The Court declines to adopt such a construction, which radically departs from the wording of the parties' bargained-for agreement.

In addition, the Spencers argue that they will be without a remedy for Avery's breach if they are not awarded the deposit monies.[56] This argument is also unpersuasive. A liquidated damages provision necessarily limits the availability of alternative remedies. By design, "parties who agree to include a liquidated damages clause in their contract, and do so properly, cannot later claim entitlement to actual damages."[57] Accordingly, the only ways in which the Spencers could recover the unpaid deposit are through specific performance[58] or, contingent upon a showing that the liquidated damages provision is unenforceable,[59] through actual damages. However, the Complaint's allegations do not suffice to establish a plausible claim of specific performance or of Paragraph 26(G)'s unenforceability.

The Court will grant the Spencers leave to amend to plead additional facts addressing these issues and other issues recognized in this Opinion, to the extent such facts exist.

## IV.    CONCLUSION

Paragraph 26(G) bars the Spencers from recovering liquidated damages for deposits that were never tendered, and the Complaint does not support an alternative basis for relief.

---

[56] Pls.' Br. at 15 [Doc. No. 6-1].

[57] *Carlos R. Leffler, Inc., v. Hutter*, 696 A.2d 157, 162 (Pa. Super. Ct. 1997).

[58] *See Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 165 (3d Cir. 1999) ("As the Pennsylvania Supreme Court has stated, the presence of a liquidated damages provision in a contract 'will not . . . bar specific performance unless the language of the part of the agreement in question, or of the entire agreement . . . shows a contrary intent.' " (quoting *Roth v. Hartl,* 75 A.2d 583, 586 (Pa. 1950)).

[59] *See Palmieri v. Partridge*, 853 A.2d 1076, 1080 (Pa. Super. Ct. 2004) (explaining that, to be enforceable, a liquidated damages provision "must be a reasonable forecast of the possible harm to the non-breaching party"). In other words, an agreed-upon liquidated damages term must "constitute[] a reasonable approximation of the expected loss rather [than] an unlawful penalty." *Brinich v. Jencka*, 757 A.2d 388, 401-02 (Pa. Super. Ct. 2000) (quoting *Carlos R. Leffler, Inc.*, 696 A.2d at 162); *see also* 13 Pa. Cons. Stat. Ann. § 2718(a).

Therefore, the Spencers' breach of contract claim will be dismissed without prejudice for failure to state a claim upon which relief can be granted. The Spencers will be granted leave to file an Amended Complaint that addresses Avery's arguments and the issues identified in this Opinion. An appropriate Order follows.